

# THE ATTORNEY GENERAL

## OF TEXAS

VAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS

March 12, 1964

Col. Homer Garrison, Jr.
Director
Department of Public Safety
Austin, Texas

Dear Col. Garrison:

Opinion No. C-225

Re: Whether, under H. B. 31, Acts
58th Legislature, a contract
carrier's permit authorizing
the transportation of a cer-
tain chemical used in treat-
ing oil wells, is required
of an independent contractor,
under the stated facts and
related question.

You have recently requested of this office an opinion on the following questions:

"Question No. 1: Under the conditions out-
lined in situation No. 1, is a contract carrier's
permit authorizing the transportation of the chemi-
cal used in treating oil wells required of the
independent contractor who has entered an agreement
as caretaker of a number of oil wells when such
transportation of the chemical for which he is
accountable is merely incidental to performance of
the total contract?

"Question No. 2: Under the conditions out-
lined in situation No. 2, is a contract carrier's
permit authorizing the transportation of the pipe
fittings used in pipe fitting work required of the
contractor who has entered an agreement to perform
the necessary pipe fitting work at oil well or oil
storage sites when such transportation of the fit-
tings for which the contractor is accountable is
merely incidental to performance of the total
contract?"

The fact situations you refer to are as follows:

"Situation No. 1: An individual enters an
independent contract with an oil company as care-
taker of a number of oil wells. His responsibilities

under such a contract are to see that oil is being pumped, gauge storage tanks or divert oil through pipelines and any other services ordinarily performed by a caretaker. One of these services is the requirement that some or all oil wells for which such caretaker is responsible be treated at intervals with a small amount of special chemical.

"This chemical is checked out to the caretaker at the oil company warehouse or storage dock in a 55 gallon barrel. The caretaker transports this chemical in his pickup along with any tools he might need to the various oil wells he has contracted to service. It is our understanding that a barrel of this chemical is used in approximately two weeks and that during this time the barrel remains on the caretaker's truck or pickup. This barrel is refilled or replaced at the company warehouse as needed. The contractor does not purchase the chemical. He is allowed $15.00 compensation which is in addition to other compensation for each barrel of chemical used. A very small part of this fee may be identifiable as compensation for transportation of property for hire over a public highway; however, the major portion is compensation which would not be subject to regulation because of off-highway travel on private property.

"Situation No. 2: A labor contractor enters an agreement with an oil company to perform the pipe fitting work and maintenance of such pipelines at completed oil well and oil storage sites. Pipe fittings such as valves, nipples, elbows, couplings, unions, etc., are secured by the contractor from local oil well supply houses and charged to the oil company. As items are used from this supply the contractor replenishes the stock of fittings in the same manner.

"Under this arrangement the contractor receives $2.50 per hour for each pipe fitter in his crew. In addition he receives $5.00

> an hour for the use of his truck or pickup.
> This fee covers transportation costs of
> pipe fitters and pipe fittings and covers
> the time the vehicle is on the highway as
> well as time spent on the job site. A
> portion of this fee may be identifiable
> as compensation for transportation of
> property over a public highway although
> the major portion would not be subject to
> regulation because of off-highway use.
>
> "Special pipe fitting tools such as
> vises, welding machines, cutting torches,
> wrenches, etc., owned by the contractor
> are mounted or transported on this truck
> which he owns. These tools are necessary
> to satisfactory pipe fitting work."

We have carefully considered the fact situations and the questions you have propounded arising therefrom. We note the interest in the problem evidenced by briefs submitted by interested groups. A study of the briefs and Article 911b, Vernon's Civil Statutes, as amended, does not yield any ready answer to the problem. The Motor Carrier Act provides that transportation of commodities for hire over any public highway in the State under a contract requires a permit from the Railroad Commission. Article 911b, Sections 2, 3, and 6, Vernon's Civil Statutes. This office can find no basis in the Texas Motor Carrier Act for the "primary business" doctrine, where no permit is required if the transportation is "incidental" to the primary business of the contractor.

As you point out in your situation No. 1, "a very small part of this fee may be identifiable as compensation for transportation of property for hire over a public highway;" and in situation No. 2, "a portion of this fee may be identifiable as compensation for transportation of property over a public highway. . . ." (Emphasis Added) It is apparent that the charge for, and transportation of, the commodities is negligible.

We, therefore, conclude that, in the specific fact situations outlined, a contract carrier's permit authorizing transportation of the chemical or pipe fittings would not be required. It should be noted that this conclusion applies only to the specific fact situations set out and any variance in the facts in the situations might easily lead to contrary conclusions.

## SUMMARY

A contract carrier's permit issued
by the Railroad Commission of Texas is not
required to cover the transportation of
the commodities in the situations set out.

Very truly yours,

WAGGONER CARR
Attorney General of Texas

By: Norman V. Suarez
Norman V. Suarez
Assistant Attorney General

NVS:aj

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Gordon Appleman
Joe Trimble
H. Grady Chandler
John Reeves

APPROVED FOR THE ATTORNEY GENERAL
BY:  Howard W. Mays